UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DAVID BOUSONVILLE, | ) | CIVIL ACTION NO. 4:21-CV-1575 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff John David Bousonville, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this court pursuant to 42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On July 15, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 13).  In this application, Plaintiff alleged he became disabled on August 1, 2015, when he was 35 years old, due to the following conditions: seizures, headaches, depression, anxiety, epilepsy, sleep apnea, and conversion disorder. (Admin. Tr. 232). Plaintiff amended his alleged onset date to December 1, 2018. (Admin. Tr. 13). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, talk, climb stairs, complete tasks, concentrate, understand, follow instructions, use his hands, and his memory. (Admin. Tr. 266). Plaintiff has a high school education and completed some vocational training. (Admin. Tr. 25). Before the onset of his impairments, Plaintiff worked as an auto detailer and injection mold machine tender. *Id*.

On November 25, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 13). On July 7, 2020, Plaintiff's application was denied at the reconsideration level of administrative review. *Id.* On July 9, 2020, Plaintiff requested an administrative hearing. *Id*.

On October 27, 2020, Plaintiff, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Kathleen McDade (the

"ALJ"). *Id*. On January 4, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 27). On January 6, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 208).

On August 27, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On September 14, 2021, Plaintiff filed the complaint in this action. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the court reverse the decision denying his application and award benefits. *Id*.

On November 18, 2021, the Commissioner filed an answer. (Doc. 10). In the answer, the Commissioner maintains that the final administrative decision denying Plaintiff's application for disability insurance benefits was made in accordance with the law and is supported by substantial evidence. *Id*. Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 14) and the Commissioner's Brief (Doc. 15) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."

*Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's

findings, but also whether those findings were made based on a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . ."). In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

    B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process,

---

[1] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on January 4, 2021.

the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform

that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

C.    GUIDELINES FOR THE EVALUATION OF A CLAIMANT'S SUBJECTIVE STATEMENTS ABOUT SYMPTOMS

In a similar fashion to the regulations setting out the five-step sequential evaluation process, the Social Security Regulations and Rulings set out a two-step process to evaluate a claimant's subjective statements about his or her symptoms. 20 C.F.R. § 404.1529.

First, subjective symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to do work activities if such symptoms result from a medically determinable impairment. 20 C.F.R. § 404.1529(b). Put differently, if there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 5180304.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms caused by the claimant's medically determinable impairments. 20 C.F.R. § 404.1529(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with the ALJ's review of the entire case record. 20 C.F.R. § 404.1529(c)(4). This includes, but is not limited to, medical signs,

Page 9 of 29

laboratory findings, diagnoses, medical opinions, prior administrative medical findings, as well as information about how these symptoms affect a claimant's ability to work. The Social Security Administration has recognized that individuals may experience their symptoms in different ways and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16-3p, 2017 WL 5180304 at *4.

Thus, to assist in the evaluation of a claimant's subjective statements about his or her symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's medically determinable impairments. These factors include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors

concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Although the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (referencing 20 C.F.R. § 404.1529(a)).

IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   "Whether the Administrative Law Judge erred and abused her discretion by failing to consider the limitations from Plaintiff's pseudo-seizure versus functional movement disorder, headache/migraine disorder, conversion disorder, cervical degenerative disc disease, and obesity, all of which were considered by the Administrative Law Judge to be severe impairments, in setting forth Plaintiff's residual functional capacity";

(2)   "Whether the Administrative Law Judge erred and abused her discretion in failing to consider the limitations from Plaintiff's diagnosed and treated obstructive sleep apnea and right thoracic pain, in setting forth Plaintiff's RFC, as the Administrative Law Judge improperly determined that these disorders were non-severe"; and

(3)   "Whether the Administrative Law Judge erred and abused her discretion in failing to use the Medical Expert, who had been engaged for purposes of this hearing, Dr. Alfred Moore, whose opinions may have been of assistance in determining Plaintiff's disability status, particularly in light of the lack of a Consultative Exam in this matter[.]"

(Doc. 14, pp. 1-2).

Based on the contentions in the argument section of the brief, however, Plaintiff's arguments are construed as follows:

(1)     The ALJ's RFC assessment is not supported by substantial evidence because the ALJ rejected several credibly established limitations (walking, sitting, standing, lifting, carrying, reaching, off task 20% of the day, 1.3 absences per month, and cane use); and

(2)     The ALJ failed to develop the record because he retained a medical expert, but did not contact him during the administrative hearing.

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her January 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2020. (Admin. Tr. 15). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 1, 2018 (Plaintiff's alleged onset date) and January 4, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 27).[2] At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: postseizure

---

[2] In her decision, the ALJ evaluated the time period through the date of decision. Plaintiff's insured status, however, ran out approximately four days before that decision was issued. If this is an error, it would have no impact on the outcome in this case.

verses functional movement disorder; headache/migraine disorder; conversion disorder; cervical degenerative disc disease with obesity. (Admin. Tr. 15). The ALJ also identified the following medically determinable non-severe impairments: depression; generalized anxiety disorder; obstructive sleep apnea; heartburn; and thoracic pain/strain.(Admin. Tr. 16-17).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 17).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> no exposure to unprotected heights, unprotected moving mechanical parts, no work around open flame or open bodies of water, no more than occasional exposure to more than moderate noise levels. Simple routine tasks. To further avoid distraction, only occasional interaction with the public, coworkers, supervisors.

(Admin. Tr. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 25). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could

engage in other work that existed in the national economy. (Admin. Tr. 25-26). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three representative occupations: attendants, DOT #239.687-014; addressers, DOT #209.587-010; and document preparers, DOT #249.587-018. (Admin. Tr. 26).

B.   WHETHER THE ALJ INCLUDED ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS IN THE RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 404.1545. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. 20 C.F.R. § 404.1545. The law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an

erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

In two sections of his brief, Plaintiff argues that the ALJ erred by excluding certain limitations from the RFC assessment. All of the alleged limitations at issue were established by Plaintiff's and his wife's hearing testimony. The ALJ discounted some of this testimony. (Admin. Tr. 21). The standard for evaluating Plaintiff's testimony about his own limitations is set forth in 20 C.F.R. § 404.1529. The ALJ is not required to articulate how evidence from a nonmedical source, like Plaintiff's wife, was considered. 20 C.F.R. § 404.1520c(d).

Without discussing whether this testimony was properly discounted, Plaintiff generally argues that the limitations it supports should have been, but were not, incorporated in the RFC. Because he has not challenged the application of the regulations, I find that the ALJ applied the correct legal standard to his evaluation of this evidence. A determination of whether these limitations were credibly established, therefore, turns on the issue of whether substantial evidence supports the ALJ's findings.

1.  The ALJ's decision to Exclude Walking, Sitting, Standing, Lifting, Carrying, and Reaching, Limitations From the RFC is Supported by Substantial Evidence

In his brief, Plaintiff argues that the ALJ's decision to exclude walking, sitting standing, lifting carrying, reaching and cane use limitations from the RFC is not supported by substantial evidence. (Doc. 14, pp. 21-22).

In the RFC assessment, the ALJ limited Plaintiff to sedentary work. 20 C.F.R. § 404.1567(a). This strength classification, by definition, explicitly includes limitations in walking, standing, lifting, carrying, and reaching.

In the Commissioner's regulations, "sedentary work" is described as work that:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Commissioner clarified this definition in a social security ruling:

> The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant

Page 16 of 29

stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251.

During his administrative hearing, Plaintiff testified that he cannot walk for long. (Admin. Tr. 50). As an example, he reported that when he spends 30 minutes at the grocery store he usually needs to stop and rest three times. *Id.* In her RFC, the ALJ limited Plaintiff to jobs that would require him to walk two hours or less throughout the workday. Plaintiff's testimony is consistent with this aspect of the RFC assessment. Accordingly, I find no basis to disturb this aspect of the RFC assessment.

During his administrative hearing, Plaintiff testified that he has seizures twice per week, and cannot stand during (or up to one hour after) those seizures. (Admin. Tr. 45). According to the medical records, Plaintiff had seven recorded "episodes" of sudden head and upper body jerking over a period of four days while admitted to an Epilepsy Monitoring Unit ("EMU") in September 2016 and had one observed

episode at a medical appointment during the relevant period in January 2019.[3] In the treatment record, the clinician noted:

> He had a characteristic spell of abnormal movement while in clinic characterized with left neck/head rotation and rhythmic right arm/hand activity lasting seconds in duration. This episode was consistent with the events he has on a daily basis and these were not epileptic based on his prolonged EMU stay. Most likely these have a predominant functional component and non-epileptic seizures, although possible other etiology includes focal motor seizures (much less likely given EMU stay).

(Admin. Tr. 360). In her decision, the ALJ limited Plaintiff to work that would require 2 hours or less of standing per workday and noted that "[a]lthough diagnosed with a movement disorder, the reported 15 episodes a day with hours of recovery are not documented in the record. Only one episode was observed, lasting 10 seconds with no postictal symptoms." (Admin. Tr. 23). The ALJ's decision to discount Plaintiff's testimony that he cannot stand for an hour after an episode is supported by the clinical records. Furthermore, Plaintiff has not suggested that the ALJ ignored or mischaracterized any evidence relevant to the additional factors under 20 C.F.R. § 1529. Accordingly, I find that the ALJ's decision to exclude this limitation from the RFC is supported by substantial evidence.

---

[3] An episode was also observed in a clinical setting in June 2016. (Admin. Tr. 399).

During his administrative hearing, Plaintiff testified that he cannot sit for more than 30 minutes at one time without falling asleep due to medication side effects. (Admin. Tr. 50). The ALJ noted in her decision, however, that Plaintiff reported no medication side effects from Depakote or Cymbalta when the medications were taken as directed. (Admin. Tr. 22, 23). These findings are supported by the record. (Admin. Tr. 473) ("no medication side effects noted"); (Admin. Tr. 482) ("no medication side effects noted"); (Admin. Tr. 510) ("no medication side effects noted). Furthermore, Plaintiff does not argue that the ALJ ignored or mischaracterized any evidence relevant to the other factors under 20 C.F.R. § 404.1529. Accordingly, the ALJ's decision to exclude this limitation from the RFC assessment is supported by substantial evidence.

During his administrative hearing, Plaintiff testified that he has trouble gripping objects and drops things. (Admin. Tr. 50). In her testimony, Plaintiff's wife confirmed that Plaintiff drops items on a daily basis. (Admin. Tr. 50). If credited, this gripping problem could affect Plaintiff's ability to reach, lift, and carry. Based on the ALJ's summary of Plaintiff's treatment records, Plaintiff exhibited full strength, there were no signs of atrophy, and reported to his medical providers that he went to the gym multiple times a week. (Admin. Tr. 22). Plaintiff has cited nothing that contradicts this characterization of the objective evidence. Accordingly,

substantial evidence supports the ALJ's determination that Plaintiff could occasionally lift objects that weigh up to ten pounds.

>    2.    The ALJ's Decision to Exclude Cane Use from the RFC

The Commissioner has issued guidance about the evaluation of, and potential vocational impact of, the use of a hand-held assistive device. This ruling provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

> In these situations, too, it may be especially useful to consult a
> vocational resource in order to make a judgment regarding the
> individual's ability to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 (internal footnote omitted).

During his hearing, Plaintiff testified that he uses a cane all the time to help "keep steady" so he does not feel like he is going to fall, as well as for standing and walking. (Admin. Tr. 47, 53). In a function report questionnaire, Plaintiff reported that, as of September 2019 he used his cane once per week when he has a seizure. (Admin. Tr. 267). In a June 2020 function report, Plaintiff stated the cane was prescribed in 2015. (Admin. Tr. 298). [4] Plaintiff is right-handed, and holds his cane in his right hand. *Id.* In her decision, the ALJ found that Plaintiff's cane was not medically necessary. (Admin. Tr. 23) ("Despite reported use of a cane since 2015, the record does not reflect a prescription nor use of a cane at examinations, and all physical exams were within normal limits."). Thus, contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's use of a cane and determined that it was not medically necessary. Plaintiff has cited to no evidence that calls that conclusion into

---

[4] In the ALJ decision denying Plaintiff's prior application for benefits for the period beginning August 1, 2015, it was noted that Plaintiff testified he was prescribed a cane in 2015. (Admin. Tr. 74). It was also noted that Plaintiff only used the cane occasionally. *Id.* No limitation involving cane use was incorporated in his RFC assessment in the prior ALJ decision.

question. Accordingly, substantial evidence supports the ALJ's decision to exclude this limitation from the RFC.

3.      The ALJ's decision to Exclude Off Task Limitation, Unexcused Absences, and Unscheduled Breaks From the RFC Assessment

Plaintiff testified that when he has a migraine or a seizure event, he has trouble focusing. (Admin. Tr. 21). Plaintiff generally alleges in his brief that the ALJ "failed to explain how she considered Claimant's migraine headaches and seizures in fashioning Claimant's RFC." (Doc. 14, p. 17).

On this issue, however, the ALJ offered a clear explanation of the limitations added to the RFC to account for concentration deficits caused by migraines and seizure events. Specifically, the ALJ explained:

> the claimant's reported loss of concentration as a result of his episodes, headaches and pain have been further accommodated with a restriction to simple routine tasks and only occasional interaction with the public, coworkers, [and] supervisors to avoid further distraction.

(Admin. Tr. 24). The explanation provided comports with what is required as a matter of law.

Next, Plaintiff alleges that, due to his migraines and seizure events, he would be off task 20% of the workday, would miss work 1.3 days per month, and would need to take unscheduled breaks. (Doc. 14, p. 18). The VE testified that if a worker were off task more than 10% of the day, that worker would be unemployable.

(Admin. Tr. 63). He also testified that a worker who needed unscheduled breaks would be unemployable, and a worker absent four or more days per month would be unemployable. (Admin. Tr. 62-63). Plaintiff does not, however, cite to any evidence to support his argument that such limitations are necessary. Instead, Plaintiff relies only on Plaintiff's report of symptoms in medical records and lists of Plaintiff's diagnoses. (Doc. 14, p. 18) (citing Admin. Tr. 356-57, 362, 453, 472, 488-489, 508 and 525). Applying the appropriate deferential standard of review, however, I find that the ALJ's decision is supported by substantial evidence. In her decision, the ALJ noted that "[i]n July 2018 the claimant reported 5/7 good days per week since starting Depakote," that Plaintiff reported to his doctors he only had 3-4 bad spells in the months preceding January 2019, his headaches were mostly "dull" with more severe migraines 1-3 times per week. (Admin. Tr. 21-23). The available medical opinion evidence suggests that Plaintiff has only non-severe mental and physical impairments. Although some of those opinions were discounted, it was because the ALJ thought Plaintiff was *more* limited than those opinions concluded.

Accordingly, substantial evidence supports the ALJ's decision to exclude these limitations from the RFC assessment.

C.    WHETHER THE ALJ MET HER OBLIGATION TO DEVELOP THE RECORD

Two sources issued prior administrative medical findings about Plaintiff's physical impairments in this case—Joanna DeLeo, M.D. (osteopathy); and David Edward Draper, MD. (pediatrics).

On November 8, 2019, during the initial level of administrative review, Dr. DeLeo assessed that Plaintiff had no severe physical impairment. In reaching this conclusion, Dr. DeLeo explained:

> Claimant is a 39y/o male who alleges seizures, headaches, dizziness, depression, anxiety, sleep apnea and conversion disorder. He is capable of pet care, personal care, cooking, mowing, household chores, driving, and shopping. 7/19 neurology note PE essentially normal with cranial nerves/strength/motor/DTR/sensory intact. Gait normal. EEG normal with no epileptiform activity. MRI brain negative. Neuro note feels that claimant has functional headaches and involuntary movements which are nonepileptic in nature. Claimant's statements are partially consistent with evidence in file.

(Admin. Tr. 91).

On July 7, 2020, during the reconsideration level of administrative review, Dr. Draper also concluded that Plaintiff had no severe physical impairment. In reaching this conclusion, Dr. Draper explained:

> The claimant is a 39y/o male who alleges seizures, headaches, dizziness, depression, anxiety, sleep apnea and conversion disorder. He is capable of pet care, personal care, cooking, mowing, household chores, driving, and shopping. 7/2019 & 01/08/2020 Neurology note— PE essentially normal with cranial nerves/strength/motor/DTR sensory intact. Gait normal.

EEG normal with no epileptiform activity. MRI brain negative.

Neuro note feels that the claimant had functional headaches and involuntary movements which are nonepileptic in nature. Claimant's statements are partially consistent with evidence in file.

The assessment & evaluation of this claim was consistent with that of the prior decision (11/08/2019).

(Admin. Tr. 102).

The ALJ found that Dr. DeLeo's opinion was "not fully persuasive, as the evidence of record and the claimant's subjective complaints support a finding of severe impairments, and the combination of impairments warrant a restriction to the reduced range of sedentary work as noted above." (Admin. Tr. 24). The ALJ was persuaded by Dr. Draper's assessment that Plaintiff had "no limitations in understanding, remembering, or applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; no limitations adapting and managing oneself"; and had no severe mental impairment. (Admin. Tr. 24). Dr. Draper, however made no such findings. *Id.*[5]

The administrative record in this case includes the curriculum vitae of a medical expert specializing in internal medicine, Alfred Moore, M.D. (Admin. Tr. 548-549). This expert was not called to testify.

---

[5] No party has suggested that this is an error requiring remand.

Page 25 of 29

Plaintiff argues that, without a physical RFC assessment, this record has not been developed enough to resolve the issue of whether he is disabled. (Doc. 14, pp. 22-25).

In response, the Commissioner argues that the ALJ's duty to develop the record does not require her to employ a medical expert in this case. (Doc. 15, pp. 24-26).

In reviewing the parties' legal authority to support their arguments, an oft-unacknowledged truth emerges. District Court review of a social security appeal is a fact-intensive inquiry and is seldomly governed by bright line rules that apply across all cases. Often, seemingly discordant court holdings are clearly reconciled after a study of an ALJ's particular findings, the type of evidence available, the extent of the evidence available, and the conclusions that the available evidence direct. The argument raised in this case, at its core, is whether the administrative record in this case was "incomplete."

Plaintiff is correct that an ALJ is obligated to "take additional actions" if the evidence in a claimant's case record is incomplete or inconsistent. 20 C.F.R. § 404.1520b(b). The Commissioner's regulations dictate that a case record is "insufficient when it does not contain all the information we need to make our determination or decision." *Id.* The Third Circuit has held, under some

circumstances, that an ALJs RFC assessment can be supported by substantial evidence when the ALJ does not credit any medical opinion. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) (finding that an ALJ decision where both medical source opinions were discounted is supported by substantial evidence). The ALJ discounted both prior administrative medical findings about Plaintiff's physical impairments. Plaintiff does not argue that the ALJ erred when he discounted these opinions.

Instead, Plaintiff argues that even if these opinions were credited, the record in this case is insufficient. However, Plaintiff has not directed the court to any authority that suggests a case record is automatically insufficient where the record is limited to multiple consistent prior administrative medical findings that do not contain physical RFC assessments because the claimant's impairments were found non-severe. Furthermore, In analyzing the unique facts of this case, I am not persuaded that this record is insufficient.

Although Plaintiff references one case in his brief, *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003), where the Third Circuit remanded due to an ALJ's failure to develop the record, the facts of that case are distinguishable. In *Reefer*, the claimant appeared *pro se* before an ALJ in September 1998. *Id.* at 378. During her hearing, the claimant testified that she had a stroke in 1997. *Id.* The ALJ had no

record of the stroke. *Id.* At the conclusion of the hearing, the ALJ said he would obtain additional records and, if necessary, call for another hearing. *Id.* The ALJ obtained additional records, but none included any evidence related to the 1997 stroke. *Id.* In his decision, the ALJ concluded that the claimant was not disabled, and, though severe, her hypertension was well-controlled. *Id.* The decision did not discuss the 1997 stroke. *Id.* The Third Circuit concluded that the ALJ erred when he failed to follow-up on the claimant's testimony about her 1997 stroke, which had obvious relevancy to the disability determination. *Id.* at 380.

This case is distinguishable from *Reefer* for four reasons.  First, the ALJ in this case found, based on Plaintiff's testimony, that he was limited to sedentary work with some additional limitations. Second, four state agency consultants (two medical and two psychological) reviewed the file in this case and determined there was enough evidence to issue an assessment. Each consultant concluded that Plaintiff did not have any severe impairment. Third, Plaintiff has not alleged that an intervening medical event of obvious relevance requires additional development of the record or that any of the treatment records submitted after these medical opinions were issued show a significant change in Plaintiff's functional capacity. Fourth, substantial evidence supports the ALJ's conclusion as to each limitation Plaintiff contends was

wrongfully excluded from the RFC. Accordingly, I am not persuaded that remand is required in this case for additional development of the record.

V.    CONCLUSION

Accordingly, I find that Plaintiff's request for relief will be DENIED as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of Kilolo Kijakazi Acting Commissioner of Social Security.

(3)    An appropriate Order will be issued.

Date: September 29, 2022                  BY THE COURT

                                          _s/William I. Arbuckle_
                                          William I. Arbuckle
                                          U.S. Magistrate Judge